**UNITED STATES GYPSUM COMPANY, Plaintiff, v.
UNITED STEEL WORKERS OF AMERICA et, Defendants.**

Common Pleas Court, Trumbull County.

No. 62441.   Decided March 16, 1953.

178

Hoppe, Day & Ford, by Ford, Warren; Macleish, Spray, Price & Underwood, by Cate, Chicago, Illinois, for plaintiffs.
Hershel Kriger, Canton, for defendants.

## OPINION
By BIRRELL, J.

In this case there is no dispute in the evidence that a strike was called October 31, 1952, and that picketing commenced and continued at the entrance of Plaintiff's Plant culminating in the incident of March 5th, 1953. Until March 3rd the picketing had been accomplished by Plaintiffs' striking employees with certain individual exceptions. On March the 3rd a number of strangers appeared in the picket line which on March 5th was augmented to a total number unanimously estimated at between sixty and a hundred and fifty. On March 5th violations occurred in that non-striking employees and management officials were forcibly prevented from entering the plant. This was accomplished by a barricade placed across the entrance and mass-picketing which prevented

automobiles from entering, and by forcibly lifting, rocking and apparently attempting to over-turn and breaking windows in, an automobile occupied by four of the supervisory personnel. The intention of these activities, admitted by the President of the Local Union was to prevent any one from entering the Plant. With this expressed intention and the showing of force sufficient to accomplish this purpose, it is not to be wondered at that neither management nor employees attempted thereafter to enter the Plant, or desired to risk their safety in such attempt.

In this situation the Plaintiff has requested the Court to issue a temporary restraining order enjoining these parties from picketing in this manner, doing certain other inflamatory acts, fixing the number of pickets to be allowed at this entrance, and requesting that upon final hearing such injunction be made permanent. It would appear from an unbroken line of authorities in Ohio and in this County that such requests have been granted in previous instances. In fact it is surprising that a reputable Union should bodily assume the prerogative of bringing about conditions that would invoke such orders from this Court.

There can be no dispute on either side of this case of the legal principles governing this situation:

(1) Manufacturing concerns have the right to offer wages and maintain their industries so long as statutory regulations are complied with.

(2) Both individuals and Corporations have the right to protection of the law against injury to person and property.

(3) Employees are permitted to refuse to work and strike if they so desire.

(4) Peaceful picketing is lawful.

(5) No one has the right to take the law into his own hands.

(6) Employers are permitted to continue their operations after strikes have been called.

(7) A group of persons has no greater right than an individual, to interfere with the lawful operation of a business of either an individual or a corporation.

In this case the Defendants attempt to excuse themselves for their actions by claiming that the Plaintiffs did not "come into equity with clean hands" in the respect that Plaintiffs failed to bargain about certain matters and demands of the Union. Although the Local Union has been certified as the bargaining agent of Plaintiffs' employees and although Plaintiffs have not agreed to the demands of such bargaining agent, there is no justification in law for the Union's claim of a right to close Plaintiff's establishment because Plaintiff has not acceeded to the Union's demands.

The National Labor Relations Act requires employers and Labor Unions to "bargain" upon the question of wages, hours and working conditions. The evidence indicates that bargaining between the parties of this law suit commenced prior to, and formally with, a meeting of October 2nd, 1952 and continued at further meetings of October 15th, October 20th, October 31st, November 25th, November 28th, December 18th, December 20th, and December 22nd without the parties being able to reach a final agreement. It continued through letters, telegrams and newspaper advertisement of the respective parties under dates of November 15th, December 12th, December 31st, 1952, February 6th, February 9th, February 12th, February 18th, February 28th, March 3rd, March 7th and March 10th, 1953. The correspondence concludes with the expression of intention and desire of both parties to continue bargaining. Defendants claim that Plaintiff has stated an irrevocable decision on certain of the bargaining subjects. Plaintiff states that Defendants have not produced valid reasons to persuade Plaintiff to change its present view on these particular subjects. Certain concessions have been made by Plaintiff which were unacceptable to Defendant, among which was the offer of increased wages made at the commencement of the bargaining, or some time prior thereto.

The Court has searched the authorities cited on behalf of both Defendants and Plaintiffs on the question of the extent to which parties are required to bargain and finds no authority which requires either party in their bargaining to accept or allow the demands of the other party. In fact in an earlier controversy between Plaintiff and the International Wood Workers of America, decided by N. L. R. B. on May 1st, 1951, and reported at Vol. 94, N. L. R. B. Decisions 112 at p. 116 the Board states "As for the alleged impasse regarding Union security, check off, straight seniority, and arbitration, it is true that Respondent was not required to yield on these or any other specific Union proposals." While the Federal Courts have uniformaly held that these matters are subject of collective bargaining no authority has been suggested indicating that either party must acceed to the other's demands in these respects. N. L. R. B. v. Hart Cotton Mills 190 Fed. 2d 964. See Article by Mr. Woolsey in XXVI Ohio Bar No. 2 (Jan. 12, 1953) entitled "The Supreme Court Docket."

With reference to the offer of increased pay which was not accepted by the bargaining agent, our Federal Courts have held that where increased pay has been offered and refused by the bargaining agent it is not an unfair labor practice to grant concessions in wages to employees during the period of negotiations. N. L. R. B. v. Bradley Washfountain Co., 192

Fed. 2d 144 (Nov. 1951) N. L. R. B. v. Crompton-Highland Mills 167 Fed. 2d 662 (May 1948) and it is likewise not an unfair practice for an employer to communicate with his employees and suggest that they return to work so long as he does not interfere with, or attempt to by-pass, the Union as bargaining agent, or limit the offer or penalize non-returning employees. N. L. R. B. v. Penokee Veneer Co. 168 Fed. 2d 868; 4 A. L. R. 2d 1350 (June 1948) Annotations @ p. 1356. Tele. Co. v. N. L. R. B. 192 Fed. 2d 664 (Nov. '51). N. L. R. B. v. Bradley Washfountain Co. supra.

This Court has no power to nor intention of assuming the authority of the National Labor Relations Board or the Federal Court, in the respect of the requirements of "bargaining" between these parties. The matter comes before this Court only in the claim of Defendants that the Plaintiff has not come into Court with "clean hands." The examination of the cases cited fail to convince this Court that this claim has been substantiated in the respect designated by Defendants.

Nor is this Court impressed with the Ohio precedents wherein relief has been refused or wherein conditions have been attached by the Court to the granting of relief. . In our own County, in the 1937 Steel strike certain conditions were attached by reason of the evidence which indicated violations on the part of the Plaintiffs as shown at page 517 of the report of **Republic Steel Corporation v. I. S. & T. Workers of America, 8 O. O. 514.** Our Court did not refuse the injunction on account of the actions of certain of the Plaintiff employees. In Cuyahoga County the violation of the National Recovery Act by the Plaintiff was held ground for refusing an Injunction in two cases. Bernstein v. Cleaners & Dyers Association, 31 N. P. N. S. 433; Cleaning and Dying Company v. Brickner, 32 N. P. N. S. 177, and in Stark County in certain unreported cases the Plaintiffs were restrained from hiring new employees and ordered to engage in collective bargaining, Case No. 88522 Stark County Common Pleas Court; And from permitting these employees to work in the business of the employer. No. 93875-Stark County Common Pleas Court. It should be noticed again that the injunctions were granted although subject to these conditions which may have been justified by the evidence.

With reference to the order of Judge Maiden at Case No. 124908 Mahoning County Common Pleas Court. it may be noted that Judge Maiden recessed from 2:15 P. M. until 10:00 A. M. the following morning to permit the parties to have opportunity for bargaining. This Court recessed this hearing from Tuesday at 4:30 P. M. to Thursday at 9:00 A. M. and from Friday noon, last, until this Monday morning, which

afforded time wherein "bargaining" could have been resumed at the desire of the parties. From the testimony of the Staff Representative of the Union that certain demands were its minimum requirements, and of the Plaintiff's manager that the arguments on those particular points were not sufficient to convince him that the Unions' concession should be adopted by his Company, and the expression of the Labor Board above referred to, it would seem to this Court that request for further time for compulsory bargaining on those subjects merely constitute dilatory tactics. Judge Maiden in his Opinion states "Until such time as the procedure before the National Labor Relations Board becomes stabilized it is necessary for a State Court of Equity to preserve peace and order in its community, and "TO DO WHATEVER MIGHT BE REQUIRED TO SO DO" with which not only his Court but also Judges Barthelmeh and McLaughlin of Stark County were in accord.

This Court understands and appreciates the various references made to the equitable principle that "one desiring equity must do equity." And were the facts in this case such that the Plaintiffs were shown to be guilty of inequitable practice this Court would be as ready as any other Courts to require "equity" before granting relief. The mere evidence, or rather suggestion, that Plaintiff has not been willing to grant as many benefits ("fringe benefits") as other employers in this area have granted, does not prove that Plaintiff is guilty of inequitable practices. This Plaintiff may not be as generous an employer as are other employers in this District. It may not pay as much money; it may not grant as many "fringe benefits"; its policy on pensions, arbitration, Union security or Union shop may not be as acceptable to employees or Union members as the policy of other employers in this district. Such restraint is not necessarily "inequitable." The remedy is not to be found in gathering together those who do not admire such practice and attempting, "vi et armis" to prevent the employer from carrying on his business. The remedy is for those who do not accept his wages and terms to secure employment elsewhere, and to where more money and more benefits are paid, which should not be difficult considering the testimony that all other employers in this area are more liberal than is this Plaintiff.

The evidence indicates that the picketing in this case was peaceful as long as it was conducted by the members of the Local Union, which the Court recognizes and compliments it therefor; but that as soon as the direction was taken over by the District officers trouble commenced. The evidence of their Staff Representative indicates that all other industries in this

District have granted their Unions concessions in certain respects and they see no reason why this Plaintiff should enjoy the privilege of not conforming to the same terms as are embodied in the contracts of other employers. From the viewpoint of the Union this may be a laudable ambition, but it does not constitute an excuse for closing the Plaintiff's plant, preventing its operation, threatening its employees, assaulting its officers or destroying its property. Neither the District nor the National officers have any right or power greater than any other individual to do, or incite, violence on any picket line.

This Court, under the evidence presented in this case, believes that it should enjoin such picketing as is other than peaceful, and therefore grants the temporary RESTRAINING ORDER AS PRAYED FOR, pending final hearing of this case. It would appear that the number of pickets at the gate should not exceed five (5) at any one time.